IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TYNIA LEVESY,                          )
                                       )
    Plaintiff,                         )
                                       )
    v.                                 )     Civil Action No. 1:22-cv-1234 (RDA/IDD)
                                       )
CHRISTOPHER SCOLESE, *et al.*,         )
                                       )
    Defendants.                        )

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Dkt. 12 at 10 n.5),[1] Motion to Dismiss for Failure to State a Claim (Dkt. 10), and Motion for Summary Judgment (Dkt. 11). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered Defendants' Memorandum in Support (Dkt. 12), Plaintiff's Opposition (Dkt. 18), and Defendants' Reply (Dkt. 20), this Court GRANTS Defendants' Motions to Dismiss and Motion for Summary Judgment for the reasons that follow.

---

[1] Although Defendants do not explicitly bring a motion to dismiss for lack of subject-matter jurisdiction, in a footnote in their Memorandum in Support, they seek dismissal of the Americans with Disabilities ("ADA") claim because the ADA does not provide a cause of action against federal agencies. Dkt. 12 at 10 n.5. The Court will construe this as a request to dismiss the ADA claim for lack of subject-matter jurisdiction. *See Gatling v. Carter*, No. CV PX 15-3723, 2017 WL 480756, at *6 (D. Md. Feb. 6, 2017) (dismissing an ADA claim because "the Rehabilitation Act is the exclusive means by which a plaintiff may raise claims against federal agencies relating to disability discrimination" pursuant to a motion to dismiss for lack of subject-matter jurisdiction).

I. BACKGROUND

A. Factual Background

In providing the factual background, the Court recounts the undisputed material facts for the purpose of resolving Defendants' Motion for Summary Judgment. *See* Dkt. Nos. 12 ¶¶ 1-26 (Defendants' Statement of Undisputed Material Facts); 17 (Plaintiff's Rule 56(d)[2] Affidavit in Opposition to Defendants' Motion to Dismiss); 19 (Plaintiff's Statement of Genuine Issues in Dispute).[3]

From October 2017 to October 24, 2018, Plaintiff Tynia Levesy, an African American woman employed by the CIA, was detailed to the National Reconnaissance Office (the "NRO") for a broadening assignment.[4] Dkt. No. 2-1, Ex. H (Pl. Decl.) ¶ 7; *id.*, Ex. O (Lawrence P.[5] Decl.)

---

[2] Plaintiff has filed an affidavit pursuant to Federal Rule of Civil Procedure 56(f). Dkt. 17. However, construing her filings liberally, it appears that the Rule she is attempting to invoke is Rule 56(d). *See* Fed. R. Civ. P. 56, 2010 adv. comm. note. (explaining that Rule 56(f) was renumbered to Rule 56(d) in 2010 without any substantive changes). For purposes of resolving the instant Motions, the Court will refer to Plaintiff's affidavit as a Rule 56(d) affidavit.

[3] Plaintiff's Statement of Genuine Issues in Dispute responds to the legal headings in Defendants' argument section rather than the numbered facts in Defendants' statement of undisputed material facts. *See generally* Dkt. 19. This is not the proper method of establishing that certain facts are disputed. *See* Local Rule 56(B) ("A brief in response to [a motion for summary judgment] shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute."). Nevertheless, given Plaintiff's *pro se* status, the Court considers any factual disputes that Plaintiff attempts to raise in her Statement of Genuine Issues in Dispute in determining which facts are disputed here.

[4] A broadening assignment "includes doing the work of another occupation and/or using core occupational skills in a variety of mission settings." Dkt. No. 2-1, Ex. A (CIA Broadening Assignment Policy) at 1. The CIA's "broadening assignments are anticipated typically to be a 1- or 2-year tour. Assignments will generally have a 1-year optional extension. Extensions must be mutually agreed upon by the officer, the host office, and the home organization." *Id.*, Ex. A at 4.

[5] Because the witnesses in the instant case are employees of national security agencies, many of the documents in the administrative record refer to each individual by his or her first name and last initial or by first initial and last initial. *See generally* Dkt. 2-1. This Court will use these same naming conventions for the sake of consistency.

¶ 53.  When Plaintiff arrived at the NRO, she was originally placed in the Policy and Compliance section within the Office of Equality & Inclusion ("OE&I").  Defendants' Exhibit ("DX")[6] 2 (Miguel R. Supplemental Decl.) ¶ 2.  After a few weeks, however, Plaintiff had personality conflicts with the Chief of Compliance and requested to be moved to a different section within OE&I.  DX 1 (Miguel R. Decl.) ¶ 3; DX 2 ¶ 2.  In December 2017, Plaintiff was reassigned to the Disability and Accommodations Program within OE&I, but her conflicts with other OE&I personnel continued.  DX 1 ¶¶ 3, 8.

Around March 2018, Miguel R. became the Director of OE&I.  *Id.* ¶ 2.  At some point thereafter, he noticed that Plaintiff had certain job performance issues.  *Id.* ¶ 5.  Specifically, Plaintiff "would n[either] reliably finish the work she was assigned on time, nor would she reliably show up to the office."  *Id.*  Miguel R. also does not recall Plaintiff attending mandatory staff "meetings regularly, if at all."  *Id.* ¶ 9.[7]  Furthermore, as the Director of OE&I, Miguel R. determined that Plaintiff and another member of the OE&I staff—Q.H.—could not work together

---

[6] The Court can properly consider the exhibits attached to Defendants' Motion for Summary Judgment to which Plaintiff did not object.  *McCloud v. Rice*, 4:20-cv-4, 2022 WL 18146043, at *3 (E.D. Va. Dec. 21, 2022).

[7] Plaintiff attempts to place facts relating to her job performance and behavior in dispute by claiming that she "never had any performance or behavioral issues to the point of being reprimanded or written up . . . ."  Dkt. 17 ¶ 3.  However, just because she did not suffer certain consequences for her actions does not mean that those actions did not occur.  Accordingly, Plaintiff's assertion is insufficient to create a dispute as to her performance and behavior at the NRO.  *See Hayes v. Sotera Def. Sol's, Inc.*, 1:15-cv-1130, 2016 WL 2827515, at *2 (E.D. Va. May 12, 2016) (treating facts that are not specifically controverted by Plaintiffs as admitted).

Plaintiff also claims that Miguel R. is lying about her behavior in the office.  Dkt. 17 ¶ 2.  Because this conclusory allegation is not supported by any evidence in the summary judgment record, the Court finds that it is insufficient to create a genuine dispute of fact.  *See Reddy v. Buttar*, 38 F.4th 393, 403 (4th Cir. 2022) (noting that in order to establish a genuine dispute as to a material fact, "the party opposing the motion [for summary judgment] must rely on more than conclusory allegations" (internal quotation marks and citation omitted)).

as a unit. *Id.* ¶ 7.  Miguel R. and his deputy, Lawrence P.,[8] met with Plaintiff and Q.H. to determine how they could resolve the issues between them.  *Id.*  Because Q.H., Plaintiff, and their supervisor, Larry E., were unable to agree on a way forward, Miguel R. and Lawrence P. decided that the program should be separated into two parts—the Accommodations Program and the Disability Program—so that Q.H. and Plaintiff would no longer have to work as closely with each other.  *Id.*

On May 18, 2018, Plaintiff told Q.H., who served as the NRO's Chief of the Accommodations Program, that she suffers from post-traumatic stress disorder ("PTSD") stemming from an assault by a CIA co-worker years before her detail at the NRO.  Dkt. No. 2-1, Ex. M (Q.H. Decl.) ¶ 11.  Plaintiff informed Q.H. that she intended to seek an accommodation from the NRO for a placement outside of the Washington, D.C. area, specifically, at least 300 miles away, to accommodate her PTSD.  *Id.*  She also informed Q.H. that she had a pending accommodation request before her employing agency—the CIA—seeking the same accommodation.  *Id.*  That request had not yet been resolved.  *Id.*

In July 2018, Miguel R. and Lawrence P. held a set of succession planning meetings with all OE&I staff individually.  DX 1 ¶ 10.  At their July 12, 2018 meeting with Plaintiff, Miguel R. and Lawrence P. discussed her performance and behavior in the office and determined that they would not be extending her broadening assignment beyond October 2018.  *Id.* ¶ 11.

Meanwhile, Q.H. called the NRO's and the CIA's Human Resources ("HR") departments to determine whether the NRO could facilitate an accommodation for Plaintiff.  *Id.* ¶ 16.  The NRO informed Q.H. that it did not have any transfer positions for a CIA detailee like Plaintiff outside the Washington Metropolitan Area.  *Id.*  An HR employee at the CIA also told Q.H. that the NRO

---

[8] Lawrence P., like Plaintiff, is African American.  Dkt. No. 2-1, Ex. O ¶ 7.

could not make any decisions about moving a CIA employee's assignment without the CIA's approval.  *Id.*

On August 28, 2018, Q.H. sent an email to Plaintiff, explaining that the NRO would have to coordinate its efforts to accommodate Plaintiff with the CIA, given the fact that Plaintiff was a CIA employee.  Dkt. No. 2-1, Ex. M ¶ 11.  Q.H. also informed Plaintiff that she was "eligible to voluntarily enter the NRO Reasonable Accommodation process as long as [she] compl[ied] with the requirements of the program."  *Id.*  She further told Plaintiff, "if your NRO reasonable accommodation requires us to relocate you out of the [Washington Metropolitan Area], the NRO is not in a position to provide this remedy to you as a reasonable accommodation," for two reasons: first, the "NRO does not have any established CIA rotational assignments outside the [Washington Metropolitan A]rea," and second, the "NRO does not have the authority to make assignment decisions on behalf of CIA officers; instead, CIA officers are required to apply for such positions via the CIA Vacancy system."  *Id.*  On October 1, 2018, Plaintiff sent an email to the NRO's Equal Employment Opportunity ("EEO") office, stating that she intended to file a complaint as a result of the August 28, 2018 email and claiming that the email constituted a denial of her request for a reasonable accommodation.  *Id.*, Ex. N (Miguel R. Decl.) ¶ 25.

Sometime in October 2018, Plaintiff met with Lawrence P. and Miguel R. to discuss her request for an accommodation and the possibility of coordinating a meeting with Plaintiff, NRO personnel, and CIA personnel in order to find an accommodation that would work for all parties. *Id.*, Ex. N. ¶ 27; *id.*, Ex. O ¶ 27.  Afterwards, Plaintiff wrote in an email to Miguel R. that the proposed meeting "presents a conflict of interest . . . and it will not work for me at this time."  *Id.*, Ex. N ¶ 27.

On October 24, 2018, Q.H. noticed that the printer in the open Accommodations bay area had a document with personal medical information that had been left out in the open. *Id.*, Ex. M ¶ 35.  The information pertained to an accommodation request submitted by an NRO employee that had been sent to Plaintiff in July 2018.  *Id.*  Because Plaintiff worked in the Disability office, she was responsible for forwarding an employee's information on to the Accommodations office without disseminating or accessing it any further and had no business need for this information in October 2018.  *Id.*  Q.H. confronted Plaintiff about whether she left the documents in the printer, emphasizing the importance of confidentiality to her.  *Id.*  Plaintiff stated that this was the kind of information she was looking for regarding comparators for her own accommodation request.  *Id.* Q.H. went to her superiors to tell them what happened, but the conversation was interrupted by another colleague, Kathie O., and Plaintiff, who was visibly upset.  *Id.*  Plaintiff was "agitated, angry, slammed her paperwork on the table, stood up and began screaming and yelling, walked down the hall and returned to the back room area."  *Id.*  Plaintiff was also "tearing up paper and speaking incoherently."  *Id.*  Q.H., Miguel R., and Lawrence P., asked for security to be called. *Id.*  On October 24, 2018, Plaintiff's broadening assignment ended, and she returned to the CIA. *Id.*

## B. Procedural Background

Prior to filing suit in this Court, Plaintiff sought resolution of her claims before the NRO and the Equal Employment Opportunity Commission (the "EEOC").  Specifically, on November 9, 2018, Plaintiff filed a Complaint with the NRO.  *Id.*, Ex. C (Complaint and Final Agency Decision).  Thereafter, on February 4, 2021, the NRO issued a Final Agency Decision ("FAD"), finding that Plaintiff failed to show that she was discriminated or retaliated against.  *Id.*  Plaintiff subsequently filed an appeal of the FAD with the EEOC on March 21, 2021, and the EEOC

affirmed the NRO's decision on August 3, 2022.  *Id.*, Ex. G (EEOC Decision).  Plaintiff initiated

suit in this Court on October 31, 2022 by filing a Complaint.  Dkt. 1.  On February 21, 2023,

Defendants filed a Motion to Dismiss for Failure to State a Claim, Dkt. 10, and a Motion for

Summary Judgment, Dkt. 11, along with one Memorandum in Support of both Motions, Dkt. 12.[9]

On March 14, 2023, Plaintiff filed an Opposition, Dkt. 18, a Rule 56(d) Affidavit, Dkt. 17, and a

Statement of Genuine Issues in Dispute, Dkt. 19.  Defendants filed a Reply on March 22, 2023.

Dkt. 20.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the Court

lacks subject-matter jurisdiction.  In considering a 12(b)(1) motion to dismiss, the burden is on the

plaintiff to prove that subject-matter jurisdiction is proper.  *Adams v. Bain*, 697 F.2d 1213, 1219

(4th Cir. 1982).  "It is the responsibility of the complainant clearly to allege facts demonstrating

that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's

remedial powers."  *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

There are two ways in which a defendant may prevail on a 12(b)(1) motion.  First, as

Defendants do here, a defendant may attack the complaint on its face when the complaint "fails to

allege facts upon which subject-matter jurisdiction may be based."  *Adams*, 697 F.2d at 1219.

Under this method of attack, all facts alleged by the plaintiff are assumed to be true.  *Id.*  However,

conclusory statements and legal conclusions in a complaint are not entitled to a presumption of

truth.  *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).  Alternatively, a defendant may attack

---

[9] As mentioned *supra*, footnote 5 in Defendants' Memorandum in Support contains their
Motion to Dismiss for Lack of Subject-Matter Jurisdiction.  Dkt. 12 at 10 n.5.

the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Under this latter approach, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B. Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). To be sure, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (*quoting Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Typically, "courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (*citing Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes her filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014). That a *pro se* complaint should be liberally

construed neither excuses a *pro se* plaintiff of her obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into her advocate. *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at \*8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### C. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)). "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)); *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Jacobs*, 780 F.3d at 570. "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). And this Court requires that the non-moving party list "all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." E.D. Va. Loc. Civ. R. 56(B).

## III. ANALYSIS

In her Complaint, Plaintiff brings a wide array of employment discrimination claims under the Americans with Disabilities Act (the "ADA"), the Rehabilitation Act, and Title VII of the Civil Rights Act of 1964 ("Title VII") against NRO Director Christopher Scolese, NRO Director of Office of Equality and Inclusion Miguel R., NRO Deputy Director of Office of Equality and Inclusion Lawrence P., and NRO Chief of the Accommodations Program Q.H.,

10

in their official capacities.  Dkt. 1.  Defendants first move to dismiss the ADA claim in its entirety.  Dkt. 12 at 10 n.5.  Next, Defendants ask the Court to dismiss the Rehabilitation Act and Title VII claims against all Defendants other than NRO Director Christopher Scolese.  *Id.* at 10.  Lastly, Defendants move for summary judgment on Plaintiff's remaining claims for failure to accommodate, discrimination based on race and disability, retaliation, and constructive discharge.  *Id.* at 10-25.  The Court considers each Motion in turn.

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Defendants first ask the Court to dismiss Plaintiff's ADA claim because "the Rehabilitation Act is the exclusive means by which a plaintiff may raise claims against federal agencies relating to disability discrimination."  Dkt. 12 at 10 n.5 (quoting *Gatling v. Carter*, No. CV PX 15-3723, 2017 WL 480756, at *6 (D. Md. Feb. 6, 2017)).  The Court agrees that the NRO is not subject to suit under the ADA and will therefore dismiss Plaintiff's ADA claim for that reason.  *See Mills v. Barreto*, No. CIV.A. 3:03CV735, 2004 WL 3335448, at *3 (E.D. Va. Mar. 8, 2004) ("[T]he plaintiff has no cause of action against the federal government under the Americans with Disabilities Act." (citing 42 U.S.C. § 12131(1)(A)-(B))).  Accordingly, the Court will dismiss Plaintiff's ADA claim.

### B. Motion to Dismiss for Failure to State a Claim

Defendants next seek dismissal of the remaining Title VII and Rehabilitation Act claims against all Defendants besides NRO Director Scolese, arguing that the head of the NRO is the only appropriate defendant in lawsuits brought under federal anti-discrimination statutes. Dkt. 12 at 10.  In response, Plaintiff cites Federal Rule of Civil Procedure 12(a)(3) for the point that it is *possible* to sue individual officers and employees of the United States.  Dkt. 18 at 9-10.  But the Court finds that this generalized proposition is not applicable here.  Case law from

within the Fourth Circuit makes clear that Title VII and the Rehabilitation Act do not provide a cause of action against any individual except for the head of an agency in his official capacity. *See Payne v. Brennan*, 2017 WL 952677, at *2 (D. Md. Mar. 10, 2017) ("When suing a government agency for a violation of Title VII . . . or Rehabilitation Act, the head of the agency is the only appropriate defendant."); *Keene v. Thompson*, 232 F. Supp. 2d 574, 580 n.6 (M.D.N.C. 2002) ("[I]n a Title VII suit brought by a federal employee, the only proper defendant is the head of the agency . . . ."). Accordingly, the Court will grant the Motion to Dismiss and dismiss all Defendants other than NRO Director Scolese from the instant action.

## C. Motion for Summary Judgment

Before turning to the substance of Defendants' Motion for Summary Judgment, the Court will first address Plaintiff's request to delay resolution of Defendants' Motion to allow time for discovery. In her Opposition, Plaintiff vaguely asserts that discovery will "strengthen the rationales to be reached in this matter." Dkt. 18 at 4. However, neither her Opposition nor her Rule 56(d) Affidavit articulates what specific discovery she would need or what ends discovery would serve.

Federal Rule of Civil Procedure 56(d) provides the Court with discretion to deny or delay a summary judgment motion or to allow a nonmovant to take discovery if the "nonmovant shows by affidavit or declaration that, *for specified reasons*, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d) (emphasis added). The Fourth Circuit has instructed that "[v]ague assertions" that more discovery is needed are insufficient to delay summary judgment. *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.1995). That is especially true where, as here, "[t]he administrative record before the [C]ourt is robust and contains a number of supporting affidavits." *Ladino v. Sapp*, 520 F. App'x 195, 199 (4th Cir. 2013); *see*

12

*also* Dkt. 2-1 (Plaintiff's submission of the administrative record containing, among other documents, several declarations); DX 1 (Miguel R. Declaration); DX 2 (Miguel R. Supplemental Decl.).  Given that Plaintiff does not explain what new information she would hope to obtain through discovery, the Court denies her request to open discovery and delay resolution of Defendants' Motion for Summary Judgment.

### 1. The Failure to Accommodate Claim

Having found that resolving Defendants' Motion for Summary Judgment at this stage of the proceedings is appropriate, the Court begins by addressing Plaintiff's claim for failure to accommodate.  In her Complaint, Plaintiff brings a failure to accommodate claim under the Rehabilitation Act, asserting that the NRO improperly denied her accommodation request that she be reassigned to a position at least 300 miles outside of the Washington, D.C. Metropolitan Area.  Dkt. 1 at 3, 4.  Defendants contend that they are entitled to summary judgment on this claim because (1) Plaintiff's accommodation request was unreasonable and (2) Plaintiff refused to participate in the interactive process.  Dkt. 12 at 10-16.

A *prima facie* failure-to-accommodate case requires a plaintiff to show that: "(1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." *Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019), *cert. denied sub nom. Hannah v. Maguire*, 140 S. Ct. 1294 (2020).  Here, Defendants do not contest that Plaintiff has a disability (PTSD) or that the NRO had notice of the disability.  They argue that Plaintiff cannot establish the third and fourth prongs of a *prima facie* failure to accommodate case.  This Court's analysis will therefore focus on those prongs of Plaintiff's claim.

Regarding the third prong, the plaintiff bears the "burden of identifying an accommodation that would allow a qualified individual to perform the job," as well as "the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002). The employer may then "present evidence that the plaintiff's requested accommodation imposes an undue hardship on the employer." *Id.* Importantly, "[r]eassignment is a disfavored accommodation that employers are generally under no *obligation* to offer." *Wirtes v. City of Newport News*, 996 F.3d 234, 241 (4th Cir. 2021); *see also Elledge v. Lowe's Home Ctrs.*, LLC, 979 F.3d 1004, 1014 (4th Cir. 2020) (emphasizing that reassignment is an "accommodation of last resort") (internal citation omitted). When a requested accommodation involves reassignment, "[i]t is the plaintiff's burden to show that a vacant position exists for which [s]he was qualified." *Fields v. Clifton T. Perkins, Hosp.*, 605 F. App'x 200, 201 (4th Cir. 2015). If there is no such vacant position, "then failure to reassign the employee does not constitute a breach of the employer's duty to reasonably accommodate the employee's disability . . . ." *Id.*; *see also Coleman v. Portfolio Recovery Assocs., LLC*, No. 2:17CV204, 2019 WL 11585359, at *13 (E.D. Va. Apr. 17, 2019) (granting summary judgment on the plaintiff's failure to accommodate claim where the record was devoid of evidence that she had identified a vacant position to which she could have been reassigned).

Here, Plaintiff has not pointed to any evidence in the summary judgment record to show that she identified a vacant position to which she could have been reassigned. While Plaintiff argues that she identified a suitable CIA office space, Dkt. 2 at 10, there is nothing in the record to suggest that the NRO—a wholly different agency, had any positions available in such a space or that it had the authority to move Plaintiff to such a position. To the contrary, the

record evidence establishes that the NRO did not have any such position to which it could send a detailee like Plaintiff and that it did not have the authority to reassign CIA employees. *See* Dkt. No. 2-1, Ex. M ¶ 11 ("[I]f your NRO reasonable accommodation request is to relocate out of the W[ashington] M[etropolitan] A[rea] [("WMA")], the NRO is not in [a] position to provide this remedy to you as a reasonable accommodation because: the NRO does not have any established CIA rotational assignments outside the WMA . . . [, and the] NRO does not have the authority to make assignment decisions on behalf of CIA officers; instead, CIA officers are required to apply for such positions via the CIA Vacancy [S]ystem.").

Furthermore, Plaintiff's generalized statement that the NRO had various offices and field assignments for which she was qualified, Dkt. 17 ¶¶ 21-22, does not carry her burden. The touchstone of the reasonable accommodation inquiry is that "a *vacant* position exists for which [the plaintiff] [i]s qualified." *Coleman*, 2019 WL 11585359, at *13 (emphasis added); *see also Kemp v. Volvo Grp. N.A.*, No. 7:11CV00535, 2013 WL 275885, at *3 (W.D. Va. Jan. 24, 2013) (noting that the position "must be vacant"). Critically, Plaintiff does not allege that those offices had any vacant positions or that there were any available field assignments at the time that she made her request.

Additionally, while Plaintiff now argues that a telework accommodation "was an option, and the NRO was required to give that option[,]" Dkt. 18 at 17, Plaintiff does not assert, and the record does not show, that she ever requested telework as an accommodation for her disability. Plaintiff cannot now seek to hold the NRO liable for its failure to provide an accommodation that she never requested from the agency. *See Roddy v. City of Villa Rica, Ga.*, 536 F. App'x 995, 1001 (11th Cir. 2013) (affirming summary judgment to the defendant on the plaintiff's failure to accommodate claim because the plaintiff never raised the possibility

of a transfer in his accommodation request); *Geter v. Gov't Publ'g Off.*, No. CV 13-916 (RC), 2016 WL 3526909, at *12 (D.D.C. June 23, 2016) ("Because Geter never requested to be reassigned to a vacant desk job as a reasonable accommodation, it cannot be said that the GPO failed to provide Geter the reasonable accommodation of reassignment to a vacant desk job.").

Plaintiff's failure to accommodate claim also fails for a second independent reason; specifically, Plaintiff expressly declined to engage in the required interactive process that may have allowed the NRO to determine whether there was a reasonable alternative accommodation for her. "With respect to the fourth element" of a failure-to-accommodate claim, once a plaintiff requests an accommodation, the parties have a duty to engage in an "interactive process to identify a reasonable accommodation." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346-47 (4th Cir. 2013) (citing cases).

Here, the record evidence shows that Plaintiff flatly refused to participate in further dialogue with NRO and CIA personnel regarding her accommodation request. *See* Dkt. 2-1, Ex. N ¶ 27 ("Unfortunately, the [meeting] presents a conflict of interest, . . . and it will not work for me at this time."). Plaintiff concedes as much in her Opposition. *See* Dkt. 18 at 10 (explaining that when Miguel R. asked her whether she wanted to enter into the interactive process, Plaintiff replied "not at this time"). This admission is dispositive of Plaintiff's failure to accommodate claim because "an employer cannot be held liable . . . where it is the employee who refuses to engage in, or who causes the breakdown of, the requisite interactive process to determine a reasonable accommodation." *Maubach v. City of Fairfax*, No. 1:17-CV-921, 2018 WL 2018552, at *5 (E.D. Va. Apr. 30, 2018) (citing 16 C.F.R. § 1630.2(o)).

For these reasons, the Court finds that a reasonable juror could not conclude that Plaintiff has established a *prima facie* failure to accommodate case under the Rehabilitation Act.  Accordingly, Defendant Scolese is entitled to summary judgment on this claim.

### 2. The Discrimination Claims

The Court next considers whether Plaintiff's discrimination claims can survive summary judgment.  Plaintiff alleges in her Complaint that the NRO's decision not to extend her broadening assignment by an additional one or two years was discriminatory based on her race and/or disability.  Dkt. 1 at 4.

In cases such as this one, where the plaintiff proceeds with circumstantial rather than direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework governs the discrimination claims.  *See Islar v. Ourisman Chevrolet Co.*, 172 F.3d 44 (4th Cir. 1999) ("A plaintiff may survive summary judgment in the absence of direct evidence of discrimination by presenting circumstantial evidence under the burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)." (citations omitted)).  Under the first step of that framework, a plaintiff must produce evidence demonstrating a *prima facie* case of discrimination.  *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011).  A *prima facie* showing of race discrimination under Title VII demands that a plaintiff establish (1) "membership in a protected class"; (2) "satisfactory job performance"; (3) "adverse [personnel] action"; and (4) "different treatment from similarly situated employees outside the protected class."  *Id.*  Meanwhile, to establish a *prima facie* case of disability discrimination under the Rehabilitation Act, a plaintiff must prove that (1) she is disabled; (2) she suffered an adverse employment action; (3) she was otherwise qualified for

the position; and (4) her employer took adverse action against her solely on the basis of her disability. *Hannah P.*, 916 F.3d at 342.

If a plaintiff can successfully demonstrate a *prima facie* case of discrimination under either Title VII or the Rehabilitation Act, then the burden shifts to the employer to respond by articulating a legitimate reason for the alleged adverse employment action. *Bonds*, 629 F.3d at 386.  If the employer does so, then the plaintiff must point to evidence in the record from which a reasonable juror could conclude that the given reason is a pretext for discrimination in order to avoid summary judgment. *Id.*

In the instant case, Defendants argue that Plaintiff's race and disability discrimination claims fail at the first and third steps of the *McDonnell Douglas* analysis.  Dkt. 12 at 18. Specifically, Defendants assert that Plaintiff cannot demonstrate a *prima facie* case of race or disability discrimination because the record conclusively establishes that she was not meeting the NRO's legitimate expectations over the course of her broadening assignment.  *Id.*  And they further contend that, even if Plaintiff could make this threshold showing, the NRO has set forth a legitimate and neutral reason for its decision, and the record is devoid of evidence suggesting that that reason was pretextual.  *Id.*  The Court will apply the *McDonnell Douglas* framework to Plaintiff's race and disability discrimination claims in turn.

a. The Race Discrimination Claim

i. Plaintiff's Abandonment of her Race Discrimination Claim

As an initial matter, Plaintiff's Opposition to Defendants' Motion for Summary Judgment makes clear that she has abandoned any race discrimination claim.  *See* Dkt. 18 ("[Plaintiff] denies any further assertions of racial discrimination . . . .").  As such, summary judgment in favor of Defendant Scolese is appropriate on that claim. *See, e.g.*, *Polite v. CACI,*

18

*Inc.*, No. 3:15-01520-MGL, 2016 WL 6830971, at *1 (D.S.C. Nov. 21, 2016) (granting summary judgment in favor of the defendant where the plaintiff failed to defend a claim on summary judgment and was thus deemed to have abandoned that claim).

## ii. Plaintiff's *Prima Facie* Case of Race Discrimination

Even if the Court were to consider the merits of Plaintiff's Title VII race discrimination claim, Defendants would nonetheless be entitled to summary judgment.  With respect to Plaintiff's *prima facie* case of race discrimination, it is undisputed that Plaintiff is a member of a protected class on the basis of her race (African American), Dkt. No. 2-1, Ex. H ¶ 7, and that she suffered an adverse personnel action (the NRO's decision not to renew her broadening assignment), Dkt. 1 at 4.  Plaintiff's allegations fail to establish any of the remaining elements of a race discrimination claim, however.

As to the second element, Plaintiff cannot demonstrate that her job performance was satisfactory.  "In order to create a triable issue regarding [satisfactory job performance], a plaintiff must proffer evidence of a genuine dispute concerning whether, at the time of [the adverse employment action], [s]he was performing h[er] job in a way that met the legitimate expectations of" the employer.  *Reid v. Dalco Nonwovens, LLC*, 154 F. Supp. 3d 273, 285 (W.D.N.C. 2016) (internal quotations and citations omitted).  Importantly, it is the employer's perception—not the employee's—"that is relevant for the purposes of analysis on the satisfactory job performance prong." *Giles v. Nat'l R.R. Passenger Corp., & Amtrak*, No. 3:19-CV-191-DCK, 2021 WL 3009015, at *4 (W.D.N.C. July 15, 2021), *aff'd sub nom. Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696 (4th Cir. 2023).

The record here contains sworn testimony that specifies the difficulties that the NRO had dealing with Plaintiff.  In particular, the record reveals that Plaintiff had personality

conflicts with individuals in two separate sections of OE&I, requiring that she first be moved from the Policy and Compliance section to the Disability and Accommodation section, and then that the Disability and Accommodation section be split in two separate parts as a result of those conflicts.  DX 1 ¶¶ 3, 7.  The record also shows that Plaintiff would not reliably finish the work she was assigned on time and that she would not reliably show up to the office.  *Id.* ¶ 5.  Further, Miguel R. does not recall Plaintiff regularly, if ever, attending the mandatory weekly staff meetings he held for OE&I personnel.  *Id.*  In light of these issues, a reasonable juror could not conclude that Plaintiff has established the satisfactory job performance element of her *prima facie* race discrimination case.

Plaintiff has also failed to establish the fourth element of a race discrimination claim, as the record is devoid of any evidence that the NRO treated any similarly situated comparators differently than her.  Indeed, Plaintiff has not pointed to any comparators at all for the purposes of her race discrimination claim.  Nor does Plaintiff point to any other evidence that would create a reasonable inference of race discrimination.  Accordingly, the record does not support a *prima facie* case of race discrimination.

### iii. Legitimate, Non-Discriminatory Reasons for Adverse Actions

Plaintiff's claim also fails as a matter of law because Defendants have presented a legitimate basis for any adverse action.  In particular, Miguel R. submitted a declaration in support of Defendants' Motions, explaining that he and Lawrence P. declined to extend Plaintiff's broadening assignment due to her behavioral and job performance issues.  DX 1 ¶ 11.

Significantly, Plaintiff has not pointed to any evidence in the record to show that Defendants' proffered reason for deciding not to renew her broadening assignment was mere

pretext and that the actual reason behind their decision was her race.  Regardless, any attempt

to do so would be undermined by the fact that Lawrence P., one of the two NRO personnel

who made the decision not to extend Plaintiff's broadening assignment is himself the same

race as Plaintiff.  *See* Dkt. No. 2-1, Ex. O ¶ 7 (indicating that Lawrence P. is African American);

*see also Jackson v. Richmond City Sch. Bd.*, No. 99-CV-642, 2000 WL 34292578, at *7 (E.D.

Va. Mar. 15, 2000) ("Proof that the decision-maker is a member of the same protected class as

[the plaintiff] weakens any possible inference of discrimination.").  For these reasons as well,

summary judgment in favor of Defendant Scolese on Plaintiff's race discrimination claim is

appropriate.

b. The Disability Discrimination Claim

i. Plaintiff's *Prima Facie* Case of Disability Discrimination

The Court next considers whether the record contains sufficient evidence to support a

*prima facie* case of disability discrimination under the Rehabilitation Act.  Defendants do not

contest that Plaintiff has established that (1) she is disabled, (2) she suffered an adverse

employment action, and (3) she was otherwise qualified to have her broadening assignment

extended.  The Court's analysis will therefore focus on whether a reasonable factfinder could

conclude that Plaintiff's broadening assignment was not extended "solely on the basis of her

disability."  *Hannah P.*, 916 F.3d at 342.

Under "the Rehabilitation Act's stringent causation standard," a plaintiff asserting

disability discrimination must establish that her disability was the only reason for her

employer's adverse employment action.  *White v. Virginia Bd. for People with Disabilities*,

No. 3:18-cv-360, 2019 WL 413546, at *5 (E.D. Va. Feb. 1, 2019) (citing *Baird ex rel. Baird

v. Rose*, 192 F.3d 462, 468-69 (4th Cir. 1999)).  Here, Plaintiff cannot satisfy this rigorous

21

standard.  While Plaintiff mentions that her behavioral issues stemmed from her PTSD, *see* Dkt. 2 at 18 ("[Plaintiff's] disability caused her to exhibit behavioral symptoms."), that does not save her disability discrimination claim.  Indeed, the Fourth Circuit has repeatedly held that an adverse employment action based on misbehavior, regardless of whether the misbehavior is precipitated by mental illness, does not amount to disability discrimination.  *See Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 n.3 (4th Cir. 1997) (observing that "misconduct–even misconduct related to a disability–is not itself a disability, and [a defendant] is free to terminate an [individual] on that basis"); *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 214- 15 (4th Cir. 1994) (no discrimination occurred when an employer fired an employee due to disability-related absences); *Jones v. Am. Postal Workers Union Nat'l*, 192 F.3d 417, 429 (4th Cir. 1999) ("The law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability.").  Accordingly, because Plaintiff cannot show that the NRO's decision not to extend her broadening assignment was solely based on her disability, her *prima facie* case of disability discrimination fails.

ii. Legitimate, Non-Discriminatory Reasons for Adverse Actions

Even if Plaintiff were able to establish a *prima facie* case of disability discrimination, she cannot prevail on her Rehabilitation Act claim because she has not rebutted Defendants' legitimate, non-discriminatory reasons for their decision not to extend her broadening assignment—specifically, her behavioral and job performance issues.  Plaintiff has not pointed to any evidence in the record that the reasons Defendants put forth are pretextual and has therefore failed to satisfy her burden of production on this score.  Consequently, summary judgment in favor of Defendant Scolese is proper on Plaintiff's disability discrimination claim.

3. The Retaliation Claim

The Court now turns to Plaintiff's Rehabilitation Act retaliation claim. In her Complaint, Plaintiff asserts that the NRO retaliated against her by declining to extend her broadening assignment in July of 2018. Dkt. 1 at 4. The *McDonnell Douglas* burden-shifting framework also applies to Plaintiff's retaliation claim. *See, e.g.*, *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 (4th Cir. 2016) (explaining that, "[a]bsent direct evidence of retaliation, [a plaintiff] may proceed [with a Rehabilitation Act retaliation claim] under the familiar burden-shifting framework of *McDonnell Douglas*"). As explained *supra*, under that framework, if a plaintiff establishes a *prima facie* case of retaliation, the burden of production then shifts to the defendant to articulate a legitimate, non-retaliatory justification for taking the employment action at issue. *Hannah P.*, 916 F.3d at 347. If the defendant meets this burden, the burden then shifts back to the plaintiff, who must demonstrate that the defendant's stated reasons are pretextual. *Id.*

a. Plaintiff's *Prima Facie* Case of Retaliation

The Court first examines whether Plaintiff has met her burden of establishing a *prima facie* case of retaliation. A *prima facie* showing of retaliation under the Rehabilitation Act demands that Plaintiff establish (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 271 (4th Cir. 2001). In the instant case, Defendants do not dispute that Plaintiff engaged in a protected activity (her request for an accommodation from the NRO) or that she suffered an adverse employment action (the

NRO's decision not to extend her broadening assignment).[10]   The Court's analysis will therefore focus on whether the record contains any evidence of a causal connection between Plaintiff's protected activity and the adverse employment action.

Vitally important, to establish causation, Plaintiff must show that her protected activity was the "but-for" cause of any adverse act of which she complains.  *Brady v. Bd. of Educ. of Prince George's Cnty.*, 222 F. Supp. 3d 459, 475 (D. Md. 2016).  In the instant case, however, Plaintiff offers nothing more than conclusory assertions that the NRO's decision not to extend her broadening assignment was based on her accommodation request.  *See, e.g.*, Dkt. 18 at 21-22 (asserting that the NRO's decision was an act of retaliation).  Furthermore, any inference of a causal connection is undermined by the nearly two-month gap between Plaintiff's accommodation request and the NRO's decision.  *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two.").  Although there is no bright line rule, the Fourth Circuit has declined to find causation where the gap between the protected activity and the alleged retaliation was several months.  *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) ("[A] two-month temporal gap . . . is sufficiently long so as to weaken significantly the inference of causation." (internal quotation marks and citation omitted)); *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (affirming district court's grant of summary judgment to defendant where gap was 10 weeks).  Here, Miguel R.

---

[10] Plaintiff also appears to claim that Defendants retaliated against her by calling security on her.  Dkt. 2 at 4.  However, escorting an employee out of the office is not an adverse employment action on which a retaliation claim can be based.  *Diggs v. Kelly*, 2017 WL 1104671, at *7 (D. Md. Mar. 23, 2017).

and Lawrence P's decision not to renew Plaintiff's broadening assignment approximately two months after Plaintiff requested an accommodation is simply too far attenuated from the date of her protected activity to establish a temporal link. *See* Dkt. No. 2-1, Ex. M ¶ 11 (Plaintiff requested an accommodation from Q.H. on May 18, 2018); DX 1 ¶ 11 (Miguel R. and Lawrence P. informed Plaintiff that the NRO would not be extending her broadening assignment on July 12, 2018). Given the absence of any non-conclusory allegations of a causal connection and the lengthy gap of time between the NRO's decision and Plaintiff's protected activity, the Court finds that Plaintiff has not established a *prima facie* case of retaliation.

### b. Legitimate, Non-Retaliatory Reasons for Adverse Actions

Assuming *arguendo* that the record could support a *prima facie* case of retaliation under the Rehabilitation Act, Plaintiff's claim would still fail for a second, independent reason. Defendants have set forth legitimate, non-retaliatory reasons for declining to extend her broadening assignment—specifically, her job performance and workplace conduct, and Plaintiff has not pointed to any evidence in the record to suggest that those reasons are mere pretext. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) (noting that not meeting job performance expectations is a legitimate, non-retaliatory reason for termination). Summary judgment for Defendant Scolese on the retaliation claim is therefore appropriate.

### 4. The Constructive Discharge Claim

Finally, the Court evaluates Plaintiff's constructive discharge claim. Plaintiff appears to allege that the NRO constructively discharged her by deciding not to renew her broadening assignment for another year or two. Dkt. 2 at 20-21. For Plaintiff's constructive discharge claim to survive summary judgment, Plaintiff must show working conditions "so intolerable that a reasonable person in [her] position would have felt compelled to resign," and that she

"actually resigned because of those conditions." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211-12 (4th Cir. 2019).  Here, as Defendants correctly point out, Dkt. 12 at 25, the absence of any evidence in the record that Plaintiff resigned from her position at the NRO is dispositive, *see Huizenga v. Am. Int'l Auto. Dealer's Ass'n*, No. 1:05CV264(JCC), 2005 WL 3132451, at *4 (E.D. Va. Nov. 22, 2005) (holding that the plaintiff could not establish a constructive discharge claim because he did not resign from his position).  Accordingly, Defendant Scolese is entitled to summary judgment on the constructive discharge claim.

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Dkt. 12 at 10 n.5) is GRANTED; Plaintiff's ADA claim is dismissed WITHOUT PREJUDICE;[11] and it is

FURTHER ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 10) is GRANTED; all Defendants besides NRO Director Christopher Scolese are DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Defendants' Motion for Summary Judgment (Dkt. 11) is GRANTED; the Clerk is directed to enter judgment pursuant to Federal Rule of Civil Procedure 58 for Defendant Scolese as to Plaintiff's failure to accommodate claim, race discrimination claim, disability discrimination claim, retaliation claim, and constructive discharge claim.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 60 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is

---

[11] The Fourth Circuit has instructed that a dismissal for lack of subject-matter jurisdiction should always be without prejudice. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for . . . [a] defect in subject matter jurisdiction . . . must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record for Defendants and to Plaintiff, who is proceeding *pro se*.  The Clerk is further directed to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
September 7, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge

27